## PARSONS v CURL et

Ohio Appeals, 5th Dist, Morrow Co

Decided December 15, 1931

Calvin H. Wood and T. B. Mateer, Mt. Gilead, for plaintiff.

Fannie M. Myers, Prosecuting Attorney, Mt. Gilead, and Cummins & Kramer, Mansfield, for defendants.

504

We would first answer the plaintiff's contention in that the evidence fails to establish the laying out of this highway as a sixty food road. The defendants offer in evidence pages 337 and 338 of an old record of the county surveyor's office, denominated "Transcript of Roads," taken and copied therein from the records of the counties of Richland, Marion, Delaware and Knox. The pages offered purport to be copied from the early road records of Richland county. We take judicial notice of the fact that Morrow County was created out of a portion of these counties by an act of the Legislature passed on Feb. 24th, 1848, appearing in **Volume 46 O. L.,** 233. Examining this act we find that Troy and North Bloomfield Townships were originally a part of Richland county. Plaintiff's land lies in Troy township.

Examining now the record offered, we find that it bears date of January 3rd, 1837; it recites that it is a "record of a road beginning at the n. w. corner of Section 3 in Bloomfield township and running thence eastwardly to intersect the Delaware and Mansfield state road." Therein further it appears that the road commences at the north west corner of Section 31 and thence eastwardly to the south east corner of Section 21, and thence on to the state road mentioned. The margin of the record bears a later correction, which states that Section 21 should be 25. Because of these inaccurate section numbers, the plaintiff maintains that this road record is not a record of the highway in question. We do not believe that this position is maintainable.

That part of the record on page 338, bears a plat. It shows the road beginning at the n. e. corner of Section 31 and proceeding eastwardly seven and a fraction miles to the Johnstown road, and thence continuing on about two miles to its ending at the State road, which it intersects at about a forty degree angle. The State road running northeasterly at the point of intersection.

Now when this plat is compared with defendant's Exhibit 2, which is a county road map, showing township and section lines in Bloomfield and Troy townships, we find that the plat of the road as laid out corresponds exactly with the road in question and upon which plaintiff's farm abuts as is shown by Exhibit 2.

We find no other road of similar length, direction and termini in these townships. It also is evident that if this road commenced at Section 3, Bloomfield township, that such a road if such there be, would be in Richland county, for that part of the township, that is, its six northern sections did not become a part of Morrow county by the act creating it. If the road record offered is in Richland county it would be a much longer road, otherwise it could not end at the State road named. The location of the village of Johnsville two miles south of the road in question, the mile marks on the road record, distances and angles to our notion all plainly indicate that the plaintiff's contention is not warranted; and the mere fact that sections are incorrectly described, or have been improperly copied, cannot dispel the fact that the road record is a record of the location of the county highway in question.

It, therefore, appears that this road was layed out in 1837, in accordance with the law as it then stood, and it is established that this road is a sixty foot road. Turning to Volume 29 O. L., 358, we find that it is provided in the first section of an act entitled "An act for opening and regulating roads and highways," enacted March 14th, 1831, "That all roads and highways which have been, or may hereafter be laid out and established agreeably to law, within this state, shall be opened and kept in repair in the manner hereinafter provided; and all county roads shall hereafter be laid out and established agreeably to the provision of this act; and all county roads shall be sixty feet wide." The prior act of June 1st, 1824, Vol. 22 O. L., 305, recited the same provisions as to width of county roads; and the act of March 14th, 1831, in the manner of width was not modified or changed by the Legislature until 1844, see Vol. 42 O. L., 18. The presumption must be, in view of the lack of proof to the contrary, that all matters and things done in the creation of this road were done and performed in accordance with law.

And it being determined that this highway was originally a sixty-foot county road,

it follows that the plaintiff and his predecessors in title acquired no right in this highway, adverse to the public, by their building of fences and planting of trees in that portion of the highway not then needed and used by the public. Their encroachment was not a total seizure of the road, but only a partial permissive use of a portion thereof not then needed. The subject is well treated in **1 O Jur, 513, §21,** see also, **Lane v Kennedy, 13 Oh St 42, Heddleston v Hendericks, 52 Oh St 460,** and **Beard v Beatty, 3 Oh Ap 354.**

Considering now the alternative claim of the plaintiff, that is that there is an abuse of discretion on the part of the county commissioners and the surveyor in the location of the road bed in the highway. We are of opinion that there is no evidence in this case upon which such an assumption may be predicated. The defendants have a perfect right to consider expense in road construction, and the character of the lands to be improved; and in this age of fast moving vehicles it is highly desirable that crooks and turns be eliminated and roads be made straight. The safety of the traveling public is perhaps more to be considered than the desire and convenience of an abutting owner. We recognize that it is a laudable object to retain the trees along our highways, they add to a road's convenience and beauty, but we are unable to say from the evidence before us, that there has been an abuse of discretion.

It is almost a universal principal of law that courts will not control the discretion of public officers, nor substitute its judgment for that of the officer; and a court will only interfere in a matter of official discretion where there is a gross abuse thereof, or fraud, bad faith, or a malicious intent to injure the property of another is clearly shown. These elements are not present in this controversy.

The injunction is dissolved and petition dismissed at plaintiff's cost. And it is recommended that as many of the trees be let to stand as is possible.

LEMERT, and MONTGOMERY, JJ, concur.